No. 10,299.

### THE STATE OF LOUISIANA VS. DOMINIQUE NATAL.

A municipal corporation has the power to contract with an individual, to authorize him to build a markethouse, rent stalls and collect dues, during a specified period, with the consideration that the land, which is his property, and the improvements upon it, shall be conveyed to the city, and that the same, at the expiration of the term, shall be turned over *absolutely*, in good order to the corporation.

The land and constructions become municipal property at the signing of the contract, and the
ownership becomes *absolute* at the expiration of the time in the city.

The market thus put up is a *public* market, and any private market found within the pro-
hibited distance of six squares from it, is there kept in violation of law.

APPEAL from the First Recorder's Court, Parish of Orleans.
*Murphy,* J.

*T. McC. Hyman,* Assistant City Attorney, and *Henry P. Dart* for
Plaintiff and Appellee.

*Branch K. Miller* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The defendant seeks the reversal of the judgment
of a Recorder's Court sentencing him to the payment of a fine and in
default, to imprisonment, for violating a city ordinance which prohibits
the keeping of private markets within a certain distance from a public
market, known as the "Keller Market."

His objections to liability are: THAT the named market, is not a *public*
but is a *private* market, THAT the ordinance on which the prosecution is
based has been repealed and THAT, if it exist, it is the creation of a
monopoly and an invasion of his immunities and privileges as a citizen
of the United States, all, in violation of the Constitution of the United
States and amendments of articles 5 and 14 of the same and of the Con-
stitution of Louisiana.

In our inquiry, we will invert those objections.

1. The defence charging the unconstitutionality of the law relative to
private markets in New Orleans and of the ordinances adopted by the
City in furtherance of it, is obsolete and exploded. In several instances
which it would be tedious to enumerate, it has been unqualifiedly over-
ruled. See 39 Ann. 439.

2. The defence that the ordinance has been repealed is utterly without
merit. It was once pressed by the same defendant in a similar prosecu-
tion and was properly overruled. State vs. Natal, 39 Ann. 439. He has
not shown why the ruling should be departed from.

So that, the only question remaining to be considered is, whether the
Keller market is or not a *public* market, for, if, true it be that it is a
*private* market, then the law and ordinances which prohibit the keeping
of a *private* market within a certain distance from a *public* market, do

not obtain, as the *public* market is the initial point from which the distance is to be computed.

3.  The defendant contends that the City had no right to make it a *public* market for the reason that the land and the improvements are not city but *private* property and that the private market ordinances are designed to protect only those markets which are owned, operated or leased by the City.

The Record shows that in 1867, in furtherance of an ordinance duly passed, the City of New Orleans and John H. Keller entered into a contract whereby, on the conveyance and transfer by the latter to the former, of his title to a square of ground which belonged to him in this city, he would be allowed to construct thereon a market and collect the revenues thereof for the term of fifteen years, subsequently extended to thirty years, the same to remain subject to municipal supervision, control and regulations, actual and prospective, all the constructions and accessaries thus put up to be turned over, at the expiration of the term, without any compensation and in good order, to the City of New Orleans, who was thereafter to be the *absolute* owner of both the land and the improvements erected upon it.

The City had the undoubted right to enter into such a contract. She possesses, by her charter then in existence, (Act 1856, No. 164, Sec. 23, all the powers necessary for a proper administration of a municipal government. Previous to that charter, she had been recognized by the then Supreme Court, the right of establishing public markets (Morano vs. Mayor, 2 La. 217) and since then, this right was again admitted. Congot vs. New Orleans, 16 Ann. 21, also Weymouth vs. City, 40 Ann. 344.

By the signature of the act evidencing the contract between the City and Keller, the ownership of the land passed from the latter to the former, subject to his right to put up the buildings and collect the revenues during the prescribed period; and the buildings themselves, during process of construction, up to completion, became the property of the City, with the same qualifications. Both on becoming municipal property, acquired the character of public property and as such, an immunity from taxation.

It is proper to notice, that the market, by the terms of the contract, was to remain subject to the supervision and *control* of the City and to all existing and eventual municipal legislation affecting such establishments.

In the case of Leclaire vs. Davenport, 13 Iowa 210, the court held, that under an ordinance of a like tenor and purport, as that passed by the

city in this case, a city had the power to authorize the erection of market houses by an individual, to declare the same public markets, and to covenant to protect the owner in the enjoyment of the privileges conceded.

In a kindred case, the Supreme Court of Texas held that a municipal corporation may contract for the building of a market house, with an individual, conceding to him in consideration market privileges, with the right to lease stalls and collect rents, and also an exemption from taxation. City of Palestine vs. Barnes, 50 Tex. 539.

In the case at bar the defendant occupies inconsistent and self-destructive attitudes.

While in one breath he claims that the market is not a *public*, but a *private* market, in another he insists that it is a private market, divided into stalls, leased to butchers.

The fact of such division carries with it the implied admission that it is a public market, for, such markets are the only ones which are divided into stalls, leased to butchers. Private markets, on the contrary, are those which are kept by individuals for their personal use and advantage, without any letting out of stalls to others, and in which only certain articles of food are permitted to be offered for sale.

Conceding, as is urged by the defendant, that the private market ordinances were intended to protect solely the markets owned, operated or leased by the city, it is apparent that, as the market in this case appertains to that class, any private market found within the specified distance, is there kept in legal contravention.

No distinction can be drawn between the facts, and the ruling in Weymouth vs. City, 40 Ann. 344, and those in the instant case, as in both, the market is city property.

It is unnecessary to determine whether, when the land and buildings upon it, used as a market, belong to a private individual, the market can be considered as a *public* market, as those features are not presented and the question is not at issue in the present controversy.

The defendant has failed to show that the market in question was subjected to the restrictions affecting private markets.

It is admitted that the defendant's market lies within the prohibited distance.

For violating the law, the defendant was properly sentenced.

Judgment affirmed.